In bank session here, we've got a full court week with five panels and lots of very interesting cases that we'll hear. So we have three cases on for oral argument this morning. I know all of you are experienced, you know the light system and so forth, principally your purpose here being to answer questions that the court may have, even if the light goes red. But if one of the judges is asking a question, please to respond to that. I'm honored this morning to be seated with Judge Reese Barksdale from Mississippi and Judge James Dennis. And having said that, we'll call the first case, United States v. Johnlouis. How does he pronounce it? Johnlouis? He pronounces it Johnlouis, but other pronunciations correct. Well, I figured since we were in New Orleans, it was Johnlouis. I generally refer to him as Johnlouis. It's easier for me. All right. Your Honor, may it please the court. The question presented by Mr. Johnlouis is whether the Fourth Amendment to the Constitution, which secures personal papers and effects, also applies to a search by a U.S. Postal Service letter carrier in the normal course and operation of the Postal Service. And whether that quote-unquote inspection is a search which triggers the Fourth Amendment and the exclusionary rule. I'm curious about your use of the word search by the postal worker. Just a regular postal carrier, right? That's correct, Your Honor. I'm curious as to how you define a search. As I understand the facts found by the district court, she found a hole in the bottom of a FedEx package, or no, a postal package, and put her finger in there and then kind of looked and saw some pellets or something. How do you find that as a quote, search, close quote, which we usually think of as more deliberative? Well, Your Honor, Judge Barksdale, the real issue about a search is this. First of all, is this package— No, I'm asking you, why is that a search? It's a search because it's not that she put her thumb into the package on the side of the priority mailbox. She said it only went in less than an inch. She said she felt something that she thought were balls and she thought at first it was marijuana. But once she took her thumb out, she could not see what's in the box. This was an assumption made by her. Then she picks up the box from the floor because it went into—her thumb went into the package as she picked it up from the floor, the tray in the postal carrier, and put it on her lap. Then she tried to look and it couldn't see. She's trying to use the ambient sunlight from the windshield. Then if you look, and I cited the example in the—it's Government Exhibit 5A and 5B, which is in the record. I think it's page 504 or something like that of the record. There is a hole, but next to the hole there's a tear where the box is torn. She puts her finger in, pulls that flap back, and using the ambient sunlight, looks into the package, and now she sees white, rock-like substances. Then she takes her phone and Googles white rock drugs and says, oh, it must be methamphetamine. And then that's the search because in Kelo and the cases that have been cited in my brief, search—the definition used in footnote 1 in Kelo, I don't know if it was Justice Scalia or not, said it's the same definition that was used when the Constitution came into effect. I think it referred back to an 1828 Webster's Dictionary. It talks about to inspect. Interestingly enough, that's the term that the Postal Service used in its regulations. All the various CFRs and the Administrative Manual and the Postal Manual that had been created based upon that, which they taught inspection. However, inspections in sealed priority mail, which in this case is sealed mail for first class, requires a warrant. And when you peel back that flap in order to gain the ability to ascertain what you believe is inside, that's a search because it's an inspection. It's an inquiry. Like if you look in your house and you search for a book or you go into the woods and you search for a thief, you're looking in other areas. It's not just an accidental nosiness as the magistrate judge and the district court accepted. You're saying you're defining inspection and search synonymously. Is that what you're doing? You said one and the same? Yes, Judge Stewart. I believe that's correct because that term is, I guess, more now a term of art used in the Postal Service, and that's what a lot of postal people refer to it as an inspection. When the Postal Service inspectors look at something, they're inspecting. What's your best case that uses inspection and search synonymously? I can't think off the top of my head which case referred to it that way. There are some Supreme Court cases that talk about that in general terms, but the real issue is not just the inspection. It's that is this area, is the contents of this priority box something that we have a reasonable expectation of privacy in? And we do. That's over 150 years now of settled federal law since Ex parte Jackson in 1878 when the Supreme Court said and ruled that they couldn't use lottery tickets seized by a postal postmaster and postal employees from the mail against the person in any criminal prosecution. And so that has been followed by Jacobson case, Van Leeuwen case, and various other cases of both the Circuit Courts of Appeals and the U.S. Supreme Court. So if we're parsing this out to what is a search, a search is, as Justice Scalia would say, words mean what they say. And if we look at what the dictionary says to search, it is not just simply something that you might gaze at that's in a room in a warehouse or on the floor that's in plain view. This person, this letter carrier, and I won't say her name because I'm giving her the privacy of that, used her efforts to investigate. I wasn't in plain view since there was a hole in the package. You're not disputing there was a hole in the package, are you? The court certainly didn't find that she made the hole. No, the court did not, and we don't dispute it was there. But even her own words, and I listed it in the brief and the transcript page, she said she could not see in the hole and see what's there. Interestingly enough, when the police were finally called, not by her but by the apartment manager, Officer LaMelle from the Lafayette Metro Narcotics Task Force said that he couldn't see anything in that hole. So it's clear that looking at the box, or just looking at it generally, you can't see anything in it. So, in effect, she had to make a search in order to make a determination in her own mind that there were drugs there, and then she made a decision not to deliver it. Now, one of the issues— Do you have any cases distinguishing between whether a person is an agent? Do you have any cases distinguishing between private companies and governmental agencies? Well, the seminal case would be the Supreme Court's case in Jacobson, where they talk about the FedEx employee in Minneapolis who forklifted damage to a package, and a package fell, and there was, like, drugs in it. And that person then contacted law enforcement to turn it in. The court there says that private person or private entity exception—private persons cannot violate the Fourth Amendment. No, sir. I'm saying, do you have any—where a distinction has been drawn between private companies and government agencies where their rules are more stringent for a government agency than for a private company vis-a-vis being an agent, as opposed to just an employee? The only thing I can think of—and maybe I misunderstand your question, Judge Barksdale—is probably the Ackerman case that was decided by Judge Gorsuch when he was on the Tenth Circuit, now Justice Gorsuch, in which NCMEC, which is the National Center for Exploiting and Missing Children, is a private corporation. And a computer analyst there is in detail with receiving hits, say, from an Internet provider—in this case it was AOL—to look at an image to determine whether it might be child pornography based upon the fingerprint of it or the hashtag of that email. Now, the government in that case argued that the NCMEC person or computer analyst was equal to private party. Justice Gorsuch said no, because Congress had delegated certain police powers to the agency as a whole, including to look at these emails and then make a referral to law enforcement in the recipient email person's address. I'm sorry. I'm not asking my questions very well this morning. Is there some case that says, okay, the distinction we draw or the different rules we apply to whether a government agent—whether you're an agent if you work for a governmental agency is whether you're an agent as you work for a private company or—I mean, it would seem there's some sliding scale there. Are you aware of any case that talks about that? What would be okay for a private company is not okay for a governmental agency. Well, with private agencies—I mean, when we talk about private agencies, we're not talking about private governmental agencies. No, sir. I'm talking about a private company like FedEx. FedEx and UPS, that's a private party exception. That's been indicated. Thank you. Now— I give up. I've tried three times now, so just don't worry about it. I don't know of a sliding scale, Your Honor. It's either it applies in one case and it doesn't apply in the other. So, the next issue— Notice that in your brief, you make repeated distinctions between a warrant issued by a state judge and a warrant issued by a United States magistrate judge. You seem to imply that warrants issued by state judges don't have the same validity as a warrant issued by a United States magistrate judge. Am I misreading your brief? I believe you are, Your Honor, because they do have— You concede, of course, that a warrant—here was a Texas proceeding. A Texas law enforcement officer, he went before a state judge, and then the federal government got involved. You concede, of course, that a state judge ruling is just as valid as a United States magistrate judge's ruling on a warrant on its face, per se. They could be equally valid, Your Honor. Okay. However, the distinction I wanted the court to understand is that whenever the search was made, this postal item, this effect was in the maelstrom. It had not left federal jurisdiction or federal custody because only postal employees can handle U.S. mail, and average people can't do that. They're not entitled to do that. That's why there's a myriad of CFRs that deal with postal service. But what I suggested was because of the search, that would violate federal law because the postal employee was obligated to go to a federal magistrate judge. What happened in this particular case, though, is by the quote-unquote delivering or handing off the package to a private party, the apartment manager, but instructing the apartment manager to call law enforcement, then the law enforcement, the narcotics task force, then contacted the state court judge. However, when we get down to the bottom of it, the exception relied upon by the district court of good faith or inevitable discovery doesn't apply because we know for a fact that at the time these packages were inspected, the information obtained by the narcotics task force came from the postal employee, and the postal employee had done all of the work for them, and that was an illegal search, and that taint of that illegal search could not then be dissipated and long sung, and the cases that follow it, by the metro narcotics task force employees obtaining a warrant from the state district court judge because the other problem with the case is there has been no independent ongoing evaluation of this particular area, and in fact, when FBI agent Herman was called to the scene by agent LaMalle from the narcotics task force, agent Herman said, we have no ongoing investigation of this residence, there's no mail watch on this residence, and therefore, a mail watch meaning they're not asking the post office to notify the FBI of suspicious packages or packages that are going to a particular address. So, the whole thing is, and what I wanted to get to that was, I think, important to, and maybe that's why I was focusing more on Ackerman, because the magistrate judge wants to argue that the postal employee who is not law enforcement, is not a postal inspector, somehow is equivocated to the private carrier in Emory that the judge cited, but that is not what Emory found. In your brief, pages 22 to 26, you seem to be saying, without record sites, a note, which you should have put record sites in there, but you seem to be saying that a mail carrier is, per se, a government agent. It is a government agent. Per se. Well, no, she is a government agent. I don't mean per se, Your Honor. She takes the same oath of office. Let's try it again. A postal carrier is automatically a government agent. Yes. In your position. She's a government employee. Where in the record do you raise that in district court? Well, we did. We raised the issue. We did. Where? What's the record site? Well, I don't have it off the top of my head, Your Honor. And you don't have it in your brief either. All right. Thank you. So, my point is that we cannot allow a postal employee to inspect or, quote, search packages because then what protection do the general public have? And we can't argue that, and I'll just wait and use the rest of my time, Your Honor. Well, you can finish your sentence if you wanted to. I was going to let you finish your sentence if you wanted to, but if you are content to deal with it on rebuttal, that's fine as well. I'll just pick it up then. Thank you, Your Honor. All right. Thank you, sir. You've preserved your time. All right. Let's hear from Ms. Walk on behalf of the government. Good morning, Your Honors. Good morning. May it please the Court, our position is that a mail carrier in this situation, her actions do not justify the suppression of evidence that was gathered without a search warrant. I was going to address one of the questions that Your Honors asked initially was about the search. The report recommendation never really addressed that issue, whether or not lifting the flap was a search. The Court did refer, on page 366 of the record, and said that Ms. Gerard, who was the postal carrier, inspected the box when she lifted the flap. That issue was never really fully flushed at the district court level, whether or not her lifting the flap was a search, even though the report recommendation referred to her inspecting the flap. When she picked up the package and her thumb went through the hole, everybody agrees that that was not a search. In fact, again, the R&R says, Mrs. Gerard's initial intrusion of placing her thumb into the hole in the box was accidental and therefore did not constitute a search. When her finger went through the hole, she felt some little balls and some aluminum. At that point, even before she lifted the flap, she had made her decision that she was not going to deliver that package because she was worried about the children in the neighborhood and because she had a relative that had some drug issues. Even before she lifted the flap, she had already made her decision to take that package to the apartment manager and have the apartment manager do whatever she wanted with it. Our point is that basically that initial encounter was not a search. Lifting the flap, it looks like from the R&R that the magistrate judge indicated that she lifted the flap. You mentioned her concern for the children. Is there something otherwise in the mail carrier's training vis-a-vis concern about either an illegal substance or a dangerous substance or something of that nature that informed what she did? Or is the argument it's not training or some precursor but the concern on her own? Well, in her manual, there is a provision that says if there's a suspected controlled substance to contact the postal inspector. Her manual does provide for that. Was all of that addressed in the motion to suppress hearing, any of that? I asked you to raise something that wasn't addressed below, but I don't remember reading it, so I don't know. That exhibit was admitted into evidence, the administrative manual? Let me ask it another way. If what you're saying, you're not relying on any kind of training or manual or something and she was adhering to when she paused after holding it, but basically was going off of her own concerns, et cetera, then I'm just trying to understand. That's what you're saying, right? Yes. Her testimony at the hearing was that she freaked out basically because she was concerned about the children. Again, she had had a relative that had had some drug substance abuse problems and she was not aware of the administrative manual saying that she needed to call her supervisor. She testified she wasn't aware of that. That emphasizes why she is not an individual to whom this would apply. Your Honors had asked previously about a scale and our position would be that the scale is the one delineated in Pierce, the Fifth Circuit case, between what you look at is not the label of the person. You don't look at whether they're UPS or whether they're FedEx. You look at what they're doing, their function, their relationship with law enforcement, their relationship with an investigation. The test articulated in Pierce is one, whether the law enforcement knew of and acquiesced in the intrusive conduct. If we claim that the intrusive conduct was opening the little flap and looking in, obviously there was no law enforcement there. She's not law enforcement. The CFRs that apply to postal inspectors delineate law enforcement duties. As a letter carrier, she does not fit into this category. She had no law enforcement training. She had no interaction with law enforcement. She never worked as a CI. She never provided information. In fact, her lack of connection with law enforcement is obvious in her statement to the apartment manager because she said, I don't know what you want to do with it. If you want to call the police, I mean, that's so apparent that she has absolutely no connection with law enforcement. Well, you heard the questions given to counsel opposite about the word agent. And so his argument would be, well, you heard my question in terms of an inspector and an agent synonymous, but you heard the question. So I'm taking his view would be notwithstanding what you just said, she became, quote, an agent, close quote. So what do you say to that? Your Honor, she never became, I mean, she may be a government employee, but all federal employees take an oath, regardless of what branch. They all take an oath to uphold the Constitution. That doesn't mean that all federal employees are subject to the Fourth Amendment prescriptions. So she, I think the way that the term government agency and postal authority has developed since 1878 and the cases such as Pierce and the cases after that indicate that by government agent in terms of the postal authority, we're referring to someone that's actively involved, not necessarily actively involved, but someone that has a law enforcement or investigative role, not a letter carrier. They're not, she doesn't even, she can't get a search warrant. That's not within her purview. That's not within her CFR. We clearly know she's not a postal inspector, and a postal inspector clearly is a government agent, and law enforcement, and the whole Schmeal Council argument, or Mr. John Lewis would argue, well, that's all well and good, but once her conduct moved from point A to point B, that transcended her into a different category. So the argument is whether there's a CFR that says she's an agent or not, she became one once she went beyond just the accidental sticking of the whole, and when she does more than that is the argument, as I understand it. Well, our position would be that she didn't become an agent of a law enforcement or investigative body at that point, because if you look at the cases, for instance, Jacobson that involves, or if you compare and contrast Thompson and Jacobson, they both involve a private carrier, FedEx and UPS. In one case, the UPS, I think Jacobson was UPS, no, I'm sorry, Jacobson was FedEx, a package was damaged, they opened it, they stuck it back in. In that case, the Supreme Court said that that person did not become a government agent, because there was no link to law enforcement. However, in Thompson, exact same kind of person, UPS employee, like a FedEx employee, Thompson is the case out of the Eastern District of Louisiana, there, this UPS person who had been opening the package, she had been contacting the police since her store opened for ten years, she identified one package a month that was suspicious, she had not been told by law enforcement not to open packages, the law enforcement had brought her a pamphlet and told her how to identify packages with drugs. So there's a big contrast between the person in Thompson and the person in Jacobson, and that shows you that it's not the label, it's not that, oh, they work for UPS, therefore they don't become a government agent, or they're a mail carrier and therefore they do. No, it's what their relationship with an investigative law enforcement body, which puts them into the purview of the Fourth Amendment and the intrusion. So you would say if we affirmed, we'd be just following Jacobson on down, is that what you're, I mean, the bottom line would be, the train of reasoning from Jacobson is what you would say? Well, there's . . . Or affirmed, would be relying on, or is this . . . Well, there's also . . . Sort of like in baseball terms, is this a tweener? You know, in other words, is this case fitting somewhere not exactly, you know, well into one of those cases we can just cite it and go, or, you know, is there anything about it that makes this case sort of in this kind of gray area, so to speak? It's a little different, just in the sense that I think neither party has been able to find a case specifically on point that says a letter carrier is not, you know, can fall into the private party arena, but I think the analogous, analogizing between, like, other cases indicate that what you're looking at is their relationship with an investigative body or a law enforcement body, rather than the label, and the fact that she happens to work for the federal government, you know, that means that anyone that works for the federal government is subject to that type of limit. Well, is the case resolvable on A, she never gets into a category where she's law enforcement and so forth, or is it a, well, assuming arguendo, she moved past just innocent mail carrier, but there's nothing tainted about the search and it's otherwise affirmed? What does the case go off on? Is it the category of whether we say she is or isn't an agent or somehow has been transformed, therefore she's in the pocket, or say somewhere in between, but even assuming she is, the search, if you will, and the rest of it isn't tainted in any way and it's otherwise affirmed. What's the government's best line of thinking? Well, in either scenario, the exclusionary rule would not apply because that's limited to police misconduct. She's not a policeman. And then also when you look at the R&R, you weigh the benefits of suppressing versus the heavy cost. And here, as the R&R provided, there was a single isolated violation. This woman's never done this before. There's not an issue, which is obvious from the lack of cases, with rogue letter carriers opening packages. So our position would be that the purpose of the exclusionary rule is not appropriate in this type of case because there's not a dilemma with letter carriers opening packages when they're not supposed to. And the heavy cost of excluding this kind of testimony outweighs the benefits. It sounds like you're arguing policy. You're making a policy argument. That's not what I'm asking. I'm like, the reason the case is on oral argument because it doesn't fit just exactly. We would have non-orally argued and sent it out the door and said, well, King's X. This is it. So somewhere it's kind of in this zone. So I'm just asking straightforward. You're from the government asking us to affirm it. And I'm asking, well, I get the policy, but where does it fit in the jurisprudence as a case turn on how we characterize the letter carrier, vis-a-vis is she an agent or not, or even assuming whatever with that, what else in the R&R then supports the affirmance? Or are we writing some new script in the law? That's what I'm asking. Well, Your Honor, again, we would stress that she doesn't fall within the purview of law enforcement. She doesn't fall within that task. Law enforcement did not know an acquiesce. And she wasn't intending to assist law enforcement. She was furthering her own aims, which was to protect the children. But furthermore, as we said, even if you looked at the beginning, when her finger went into the box before it became what the R&R said was a search, she had already made up her mind that she was going to take that package to the apartment manager. So whether or not she lifted the flap wouldn't have mattered in the long run. So in these facts, we would say that regardless, her delivering the package to the apartment manager and the subsequent actions were constitutional. I was curious, the question I asked counsel for defendant. I looked at the defendant's motion to suppress. It nowhere says the carrier was per se an agent. And I looked at the opening and reply briefs in the file and in the record. I just don't have them memorized. Was this point really ever raised to the district court that a letter carrier is per se a government agent? Because that's the argument made here. Well, in the report and recommendation, the magistrate judge indicated that she was not a postal inspector and went through that analysis. So the R&R never really said she was a government agent. It more stressed the fact that she did not fall within the purview of the investigative duties of a postal inspector. And the R&R really stressed that. So it looks like the R&R, and I'd have to go back and look at it a little more carefully, never really said she was a government agent, but more said she wasn't a postal inspector. Didn't fall within the purview of those CFRs. We would also indicate that this case is completely different than other cases in which courts have found that individuals become government agents, like the Ackerman case, which dealt with the National Center for Missing and Exploited Children. There, the emphasis was on the police function of this organization. It was obvious that they had special law enforcement duties and powers. And so when they opened up these emails, they needed a search warrant because they were within—they had special law enforcement duties. That's completely different than this letter carrier who had no special law enforcement duties. The same thing is true with In Re Bene, which is the California Bankruptcy Court cited by the defendant. There, a trustee had redirected some mail, and the issue was whether or not—and even the court said, we're not sure the Fourth Amendment really applies to this. The bankruptcy court said the Fourth Amendment, although not clearly applicable to such a case, but the important thing is the trustee investigates the financial affairs of the debtors. So again, you have that investigative element that caused the court to hold that the trustee needed a search warrant before redirecting the mail. There are other cases where it's really not clear whether the court—they didn't—they were more looking at the search. They weren't looking at the individual doing the search. So you have a lot of cases from the Fifth Circuit where they'll talk about postal employees, but the ultimate issue is not who was doing it. It was more like, for instance, in Phillips, which is a Fifth Circuit case, there was a reference to postal officials and a postman, but again, the emphasis was more on the type of search, not on who was doing it. And the same thing with Onsonagoo. There was a search by a postal inspector, but the issue there was consent. So in a lot of these cases from the Fifth Circuit, like Onsonagoo, Jones, and Phillips, that issue is not addressed. And so the language in those cases is very general in the sense that the words postal officials are used, postmaster. Well, in Onsonagoo, it was a postal inspector. So those cases don't really address a letter carrier. And as to the—I'll quickly address the good faith exception. You know, the police officer who replied to the call, he testified he did not interview the mail carrier because he already had enough information. He had a statement from the apartment manager that the lady to whom this material was addressed had texted her and asked her about some packages. The FBI agent who contacted him and said, we think this house is a stash house, and then the dogs alerted. He had enough at that point to write the affidavit for the search warrant, and that's why he said he did not interview the letter carrier. And there was nothing untruthful. He just said she thought there were drugs in there. There was nothing intentional or with disregard for the truth in his affidavit. Thank you, Your Honors. All right. Thank you. All right. Counsel, you've reserved your rebuttal. Thank you, Your Honor. First of all, I want to address a few of the issues brought up by an esteemed opponent. The CFRs make it not legal because they have the force of law because they're promulgated by congressional authority directed to the post office department. That the only persons that can open sealed mail are persons in the dead letter room, which means that there is nothing on the face or the cover, so to speak, of the letters so which you can determine to whom, who is the recipient, and therefore you go to look within the letter to determine whether you can find information out of the recipient or the sender. But that does, and the CFRs do not just pertain only to postal inspectors. They pertain to every single person that works in the postal service. They have the domestic mailman, the administrative supplemental mailman. They have numerous CFRs that all deal with this. And, in fact, the argument, I think, falls on its own self. Now, as far as other people acting as agents, she cited M. Ray Binning, which was the bankruptcy trustee. A bankruptcy trustee has no law enforcement authority, and they're not law enforcement people. But this person redirected first-class mail to open it to determine whether there was probably some tax evasion going on. And the court found that, no, you cannot use this information so found in a criminal prosecution for that. In Birnbaum, the courts found under the Federal Tort Claims Act that the Fourth Amendment applied to CIA agents who opened over a 20-year period probably 1.5 million letters coming from foreign countries that were suspect in the United States, primarily the Soviet Union and other countries with whom we did not have good relations. Ackerman, she mentioned again. Ackerman is another example of a private corporation that has government delegated authority by Congress to do these searches. Those people are government agents for purposes of this. Here you have a postal employee who swore an oath, the same as the judges do, the same as congressmen do, to uphold and defend the Constitution of the United States. That is an affirmative oath not to violate the Constitution. The Fourth Amendment is part of the Constitution. They can't make unwarranted or warrantless searches of postal mail as long as it's priority of first-class sealed mail. So any government employee who takes an oath is a government agent? Sir? Any employee, government employee, who takes an oath to uphold the Constitution, laws and Constitution, is a government agent for purposes of the Fourth Amendment? They certainly should be and they certainly may be, depending, and we also have to get to what exactly did the person do? Because just being a government agent doesn't automatically mean it's a violation. Then it's not per se. We have to look at the underlying facts. Well, we have to look at the way the Postal Service is. It is the only agency that I know that's established by the Constitution and Congress has delegated the authority to make all the rules and regulations of it. It's a very rule and regulated structure. No one else can deliver mail. No one else has the right to possess mail or to deliver it or take it to the postal inspector or anyone else, only a postal employee. So it's very regulated. This may be different and you may, on a factual analysis, may make it different than if you're a Social Security worker, but I would think that they could end up being like N. Ray Binney, and if they took information that they weren't supposed to have or they opened letters they weren't supposed to open, that they too could be found to be an agent for purposes of the Fourth Amendment because it's the violation of the Fourth Amendment right, the violation of your expectation of privacy. That is the issue here. It's not just the person's title. Except private persons. Anybody that works for UPS or FedEx is a government agent because they're carrying mail, certainly, and if they open the mail they would be guilty of a Fourth Amendment violation, which we know is not the law. Well, no, that's not the law except in cases like Thompson here in the Eastern District of Louisiana, in which the judge found that when the UPS or FedEx, for that matter, this was a UPS case, was working with law enforcement and in fact received emoluments from them and instruction from them opened it. And it depends on whether or not they're working with law enforcement. We know this carrier wasn't. Right, and that would go to the facts of the case and how the search came about. And in this particular case, Ms. Gerard, I'm sorry, the postal employee, was in the course and scope of her employment as post service and she opened the mail by peeling back the flap and making a search. And that violated the constitutional right of privacy. Right. And should be supressed. Thank you, Your Honor. Thank you, Mr. Granger. Thank you, Ms. Walker. Mr. Granger, we note that you are court appointed in this case and we certainly appreciate your work as a court appointed attorney, not only in this case but in the many cases in which the court relies on good service to the case. Thank you, Your Honor. I appreciate that. All right. We call the next case up, number 21-2.